**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **NEC CORPORATION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ANKER INNOVATIONS TECHNOLOGY CO., LTD. and ANKER INNOVATIONS LTD.**<br><br>**Defendants.** | **Civil Action No. 2:24-cv-00720-JRG**<br><br>**PUBLIC VERSION** |

**DEFENDANTS' MOTION TO EXCLUDE EXPERT OPINIONS OF JIM W. BERGMAN**

**PUBLIC VERSION**

# TABLE OF CONTENTS

**Page**


I. ARGUMENT ....................................................................................................... 1

A. Mr. Bergman's Reasonable Royalty Opinions for the '467 and '814 Patents Rely on Supposed Apportionment of the Technical Value of the Patented Inventions to Third-Party Subscriptions ............................................................ 2

B. Mr. Bergman Relies Solely on Dr. Madisetti's Unreliable Apportionment and Thus His Opinions Are Unreliable for the Same Reasons. ............................ 3

C. Mr. Bergman's Apportionment Is Independently Unreliable. ............................... 3

II. CONCLUSION ..................................................................................................... 4

**PUBLIC VERSION**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ........................................ 1

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) ........................................ 1

*Realtime Data, LLC v. Actian Corp.*,
No. 6:15-cv-00463-RWS-JDL, 2017 WL 11661896 (E.D. Tex. Mar. 24, 2017) ............... 4

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) ........................................ 1

*VirnetX, Inc. v. Cisco Sys. Inc.*,
767 F.3d 1308 (Fed. Cir. 2014) ........................................ 1-2, 4

Anker moves to exclude certain opinions of Plaintiff NEC Corporation's damages expert, Jim W. Bergman, for failing to meet the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702.

Mr. Bergman recognized that damages must be "apportioned" to reflect the invention's footprint in the marketplace, but his effort to do so for the '814 and '467 patents is fatally flawed and unreliable. Reliable apportionment is critical here because Mr. Bergman does not rely on an entire market value theory. Mr. Bergman attempted to isolate the "incremental benefit" of those two patents by starting with the price of third-party subscriptions then applying a 50% apportionment factor provided to him by NEC's technical expert witness, Dr. Madisetti. *First*, because Dr. Madisetti's analysis is unreliable (and subject to a concurrently filed motion to strike), and Mr. Bergman's opinions necessarily depend on his analysis, Mr. Bergman's opinions also must be excluded. *Second*, even assuming that Dr. Madisetti could testify as to his opinion that 50% of the *technical* value of third-party subscriptions is attributable to the '814 and '467 patents, that would not reliably support Mr. Bergman's opinion that 50% of the *economic* value of the third-party subscriptions is enabled by the '814 and '467 patents, or that the 50% factor can be used to reliably apportion the value of the patent claims to Anker's Accused Products.

## I. ARGUMENT

To satisfy its burden of proving damages, NEC "must 'sufficiently [tie the expert testimony on damages] to the facts of the case.'" *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011) (quoting *Daubert*, 509 U.S. at 591). NEC's asserted reasonable royalty damages must be both apportioned to the value of the patented invention and based on reliable evidence. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226-27 (Fed. Cir. 2014). In conducting an apportionment analysis, an expert must "carefully tie proof of damages to the claimed invention's

footprint in the market place." *VirnetX, Inc. v. Cisco Sys. Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014). Assessing the reliability of the methodology underlying an expert's apportionment analysis is an important part of a court's gatekeeping obligation. *See id.* at 1328.

### A. Mr. Bergman's Reasonable Royalty Opinions for the '467 and '814 Patents Rely on Supposed Apportionment of the Technical Value of the Patented Inventions to Third-Party Subscriptions

To determine a reasonable royalty for damages for the alleged infringement of the '467 and '814 Patents, Mr. Bergman used an "income approach" to calculate the "incremental benefit attributable to each of the patents-in-suit." Ex. A (April 20, 2026 Expert Report of Jim W. Bergman), ¶ 210.[1] He undertook the same analysis for both the '814 and '467 Patents. Ex. A, Bergman Rep. ¶ 159; Ex. B (Transcript of May 29, 2026 Dep. of James W. Bergman), 128:4-130:6. First, he analyzed subscriptions offered by third-party companies (Ring, Arlo, Google, Swann, and Wyze) that he believed offered functionalities similar to the local non-subscription functionalities in Anker's Accused Products. Ex. A, ¶ 158; Ex. B, 128:4-130:6. But because those subscriptions admittedly "included additional features and functionalities outside the features enabled by the '467 patent and the '814 patent," Mr. Bergman recognized that he "needed to apportion to the value of the features" supposedly enabled by the two patents. Ex. A, ¶ 163; Ex. B,165:18-166:15.

"According to an analysis performed by Dr. Madisetti," Mr. Bergman "underst[ood] that a minimum of 50% of the value" of the subscriptions "can be attributed to the AI features enabled by the '467 and '814 patents," which he believed "appears reasonable" based on his review of

[1] NEC served a Supplemental Report for Mr. Bergman a month after his Report and after Anker served its Rebuttal Damages Report. In agreement for Anker not moving to strike this belated Bergman Report, NEC agreed that Anker can serve its own Supplemental Report in response. The Supplemental Report does not address the issue that is the subject of this Motion.

Anker marketing documents. Ex. A, ¶ 163. Mr. Bergman then, without further adjustment or analysis, applied the 50% apportionment to the retail price of the third-party subscriptions, e.g., he calculated a "Gross Patent Monthly Feature Value of $5.00" from the $9.99 monthly subscription price. Ex. A, ¶ 164, Schedule 2.5; Ex. B, 128:4-130:6. The 50% "apportionment" described above is the only way Mr. Bergman's reasonable royalty analysis accounted for the value of the patented features. Ex. A, ¶ 164, Schedule 2.5; Ex. B, 166:16-167:2 ("I only have one calculation…. I relied on the 50 percent.").

### B. Mr. Bergman Relies Solely on Dr. Madisetti's Unreliable Apportionment and Thus His Opinions Are Unreliable for the Same Reasons.

Mr. Bergman admitted at his deposition that his 50% apportionment is based solely on Dr. Madisetti's opinion that 50% of the value of the third-party subscriptions can be attributed to the patented features enabled by the '467 and '814 Patents; he did not independently derive the 50% value. Ex. B, 134:3-135:25 (Bergman testifying that he did not recall whether Dr. Madisetti explained his methodology for coming up with a 50% apportionment); *see also id.*, 166:16-167:2. Dr. Madisetti's 50% apportionment opinion is also the subject of a concurrently filed motion to strike. Given that Mr. Bergman did not perform his own analysis and admitted that apportionment is necessary, Ex. B, 165:18-167:2, to the extent the Court strikes Dr. Madisetti's opinion, any apportionment by Mr. Bergman is unreliable and baseless. Thus, Mr. Bergman's incremental benefit theory for these patents is unreliable and should be struck.

### C. Mr. Bergman's Apportionment Is Independently Unreliable.

Even if Dr. Madisetti's technical apportionment is not struck, Mr. Bergman's opinion is still based on an unreliable methodology because he simply applies Dr. Madisetti's 50% *technical* apportionment as a 50% *economic* apportionment.

Dr. Madisetti agreed that he offered only a *technical* valuation of the benefits of the

patented technology to the third-party subscriptions, not an *economic* valuation. Ex. C at 301:2-302:18. In other words, while he identifies technical features of the third-party subscriptions allegedly tied to the '467 and '814 Patents, he does not assign a value that a customer would pay for each of those features.

Mr. Bergman, as the damages expert, needed to translate Dr. Madisetti's technical opinion into an economic apportionment. *See Realtime Data, LLC v. Actian Corp.*, No. 6:15-cv-00463-RWS-JDL, 2017 WL 11661896, at *5 (E.D. Tex. Mar. 24, 2017) (striking damages expert's opinion "relying solely on [technical expert] for an ultimate apportionment value" because "there is an inherently economic quality to an apportionment analysis" and the technical expert's apportionment "may not be the final apportionment value itself"). But Mr. Bergman conducted no such analysis and did not apply *any* methodology—he simply applied Dr. Madisetti's 50%, without knowing Dr. Madisetti's methodology (if any), because it "seemed reasonable to me." Ex. B at 134:25-135:25; *see also id*. at 134:13-24 ("If you're talking specific methodology [applied by Dr. Madisetti], I don't recall.").

"The law requires patentees to apportion" absent a showing that "its patented technology drove demand for the entire product." *VirnetX*, 767 F.3d at 1329 (holding expert testimony inadmissible where it failed to properly apportion). The need to apportion is particularly acute here given that Mr. Bergman's reasonable royalty calculations are based on the accused product revenue for the *entire* product sale, Ex. B, 43:4-8, even though he does not opine that the entire market value rule applies. *Id*. at 38:18-39:8.

## II. <u>CONCLUSION</u>

For the foregoing reasons, Anker respectfully requests that the Court strike and exclude the aforementioned expert opinions of Mr. Bergman. Specifically, paragraphs 158-212 and 286-300.

**PUBLIC VERSION**

Dated: June 3, 2026

Respectfully submitted,

*/s/ Eric H. Findlay*

ERIC H. FINDLAY
efindlay@findlaycraft.com
State Bar No. 00789886
FINDLAY CRAFT, P.C.
7270 Crosswater Ave., Suite B
Tyler, TX 75703
T: (903) 534-1100
F: (903) 534-1137

JOHN T. AUGELLI
jaugelli@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
T: +1 212 506-5000
F: +1 212 506-5151

PENGWEIXI SUN
rsun@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: +1 650 614 7455
Facsimile: +1 650 614 7401

Of Counsel:
T. VANN PEARCE, JR.
vpearce@orrick.com
CHRISTOPHER J. HIGGINS
chiggins@orrick.com
VIVIAN C. KELLER
vkeller@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
T: +1 202 339 8400
F: +1 202 339 8500

YUFENG (ETHAN) MA
yma@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
5701 China World Tower A
No.1 Jianguomenwai Avenue
Beijing, 100004
People's Republic of China
T: +86 10 8595 5600
F: +86 10 8595 5700

GERALD E. PORTER
gporter@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
120 Broadway, 4th Floor
Santa Monica, CA 90401
T: +1 310 633 2800

THOMAS JAMES
tjames@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
353 N Clark Street, Suite 3600
Chicago, IL 60654
T: +1 312 924 9800
F: +1 312 924 9899

*Attorneys for Defendants*
*Anker Innovations Technology Co., Ltd. and*
*Anker Innovations Ltd.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 3, 2026, a true and correct copy of the above document was served on all counsel of record via electronic mail.

*/s/ Eric H. Findlay*
Eric H. Findlay

## CERTIFICATE OF CONFERENCE

The undersigned certifies that the parties' lead and local counsel met and conferred in compliance with Local Rule CV-7(h) regarding this motion. NEC indicated that it opposed the relief requested in this motion.

*/s/ Eric H. Findlay*
Eric H. Findlay

[redacted]

[redacted] [redacted]