**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| NEC CORPORATION,<br><br>*Plaintiff*,<br><br>v.<br><br>ANKER INNOVATIONS TECHNOLOGY CO., LTD., and ANKER INNOVATIONS LTD. (d/b/a "eufy"),<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 2:24-CV-00720-JRG |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's Opposed Motion for Leave to Supplement the Infringement Report of Dr. Madisetti Regarding the '814 Patent ("Motion"). (Dkt. No. 185.) Having considered the Motion, all associated briefing, and the nuanced means-plus-function claim constructions that are at issue, the Court finds that the Motion should be **GRANTED**.

## I. BACKGROUND

Plaintiff NEC Corporation ("NEC") sued Defendants Anker Innovations Technology Co., Ltd. and Anker Innovations Ltd. (collectively, "Anker"), accusing them of infringing six U.S. patents. (Dkt. No. 63.) Only one asserted patent, U.S. Patent No. 11,537,814 (the "'814 Patent"), is at issue in NEC's Motion.

At a high level, NEC's Motion seeks leave to address certain means-plus-function claim constructions specified in the Court's *Markman* Order. (Dkt. No. 157.) *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996). NEC found itself in the unique position where the *Markman* Order addressed certain constructions for means-plus-function terms after expert

discovery closed and the Court declined to adopt NEC and Anker's proposed constructions. A relevant timeline leading to NEC's Motion follows.

- January 20, 2026 – NEC and Anker filed competing constructions for "identification unit," "determination unit," and "data transmission unit" terms for the '814 Patent. (Dkt. No. 73 at 3–4.) NEC contended that the units were means-plus-function terms that required "CPU" structures and specified various data functions; Anker contended that the units were indefinite. (*Id.*)

- February 3, 2026 – The Court held a *Markman* hearing addressing the "unit" terms. The Court did not offer preliminary constructions for these terms.

- May 29, 2026 – Expert discovery closed.

- June 26, 2026 – The Court's *Markman* Order issued and adopted specific and nuanced constructions for the unit terms that neither party advanced. (Dkt. No. 157 at 48–50.)

The following table illustrates the differences between NEC's proposed constructions and the Court's constructions. As shown, the two constructions differ markedly.

| '814 Patent Claim Term | NEC's Proposed Construction | Court's Construction |
|---|---|---|
| "an identification unit that identifies an object indicated by data by applying the data to a model learned by machine learning"<br><br>'814 Patent: claim 1 | Function: identifying an object indicated by data by applying the data to a model learned by machine learning<br><br>Structure: CPU of a computer that operates according to a data providing program provided at 33:34–37, or equivalents thereof | "a general purpose processor programmed to calculate the reliabilities the image is each type of object from a set of objects on which the model has been trained by using (1) the vector (X1, X2, . . . Xn)T (where "n" is the number of pixels of the image), (2) the coefficients of each layer included in the model, and (3) the weights included in each model," and equivalents thereof |
| "a determination unit that determines whether or not the data is transmission target data to be transmitted to a predetermined computer | Function: determining whether or not the data is transmission target data to be transmitted to a predetermined computer based on a result obtained | "a processor configured to:<br><br>(1) when the reliability corresponding to the identification result is equal to or less than a predetermined threshold value, determine that an |

| '814 Patent Claim Term | NEC's Proposed Construction | Court's Construction |
| --- | --- | --- |
| based on a result obtained by applying the data to the model"<br><br>'814 Patent: claim 1 | by applying the data to the model<br><br>Structure: CPU of a computer that operates according to a data providing program provided at 33:34–40, or equivalents thereof | image as a target used in the identification processing is the transmission target data; and<br><br>(2) when the reliability exceeds a predetermined threshold value, determine that the image as the target used in the identification processing is not the transmission target data,"<br><br>and equivalents thereof<br><br>- AND -<br><br>"a processor configured to:<br><br>(1) transmit the image to one or more different data providing systems;<br><br>(2) receive an identification result from the one or more different data providing systems;<br><br>(3) when the identification result of the object appearing in the image specified by the identification unit and at least one identification result from the one or more different data providing systems are different, determine that the image is the transmission target data;<br><br>(4) when the identification result of the object appearing in the image specified by the identification unit and all of the identification results from the one or more different data providing systems are the same, determine that the image is not the transmission target data,"<br><br>and equivalents thereof |

| '814 Patent Claim Term | NEC's Proposed Construction | Court's Construction |
|---|---|---|
| "a data transmission unit that transmits the data determined to be the transmission target data to the predetermined computer at a predetermined timing"<br><br>'814 Patent: claim 1 | Function: transmitting the data determined to be the transmission target data to the predetermined computer at a predetermined timing<br><br>Structure: CPU of a computer that operates according to a data providing program provided at 33:41–43 and communication interface, or equivalents thereof | "a processor programmed to (1) determine if the current time is a scheduled data transmission time, and (2) if it is, transmit each image determined to be the transmission target data that has been obtained since the last transmission of transmission target data," and equivalents thereof. |

## II. LEGAL AUTHORITY

To determine whether a party may supplement an expert report after the close of expert discovery, the Court considers four (4) factors: "(1) the explanation, if any, for the party's failure to comply with the discovery order; (2) the prejudice to the opposing party of allowing the witness[] to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the witness[] testimony." *Image Processing Techs., LLC v. Samsung Elecs. Co., Ltd.*, No. 2:20-cv-00050-JRG-RSP, 2020 WL 2395928, at *2 (E.D. Tex. May 12, 2020) (quoting *Raytheon Co. v. Indigo Sys. Corp.*, No. 4:07-cv-109, 2009 WL 413081, at *1–2 (E.D. Tex. Feb. 18, 2009)).

## III. ANALYSIS

NEC argues that good cause exists to supplement its expert report because NEC could not have foreseen the means-plus-function constructions that the Court adopted for the '814 Patent. (Dkt. No. 185 at 2–3.) It explains that Dr. Madisetti's supplemental infringement report is only twenty-five pages long and that the supplement "will not add new discovery burdens." (*Id.* at 3–4.) NEC contends that any limited prejudice can be cured without disturbing the case schedule

and forthcoming August 27 and 28, 2026 pre-trial conference. (*Id.* at 4–5.) NEC also argues that its supplemental opinions are important to a fair trial on the '814 Patent. (*Id.* at 5–6.)

Anker contends that the Court should not allow a supplement because NEC allegedly chose not to address the Court's *Markman* Order constructions that neither party proposed. (Dkt. No. 211 at 7–10.) Anker stresses that NEC cited the specification passages of the '814 Patent in its briefing that the Court considered for its *Markman* Order. (*Id.*) Anker also contends that NEC's supplemental report introduces new infringement theories for every limitation of claim 1 of the '814 Patent, which "would likely generate . . . new expert reports responding to the supplemental reports and disclosures, and new summary judgment, *Daubert*, and *in limine* motions," greatly prejudicing Anker. (*Id.* at 10–13 (citing *Cooper Notification, Inc. v. Twitter, Inc.*, 545 F. App'x 959, 966 (Fed. Cir. 2013)).) Anker argues that a continuance would not cure the prejudice associated with such a supplement because trial is currently set for September 11, 2026. (*Id.* at 13–14.) According to Anker, such a supplement is "futile." (*Id.* at 14–15.)

The Court finds that NEC's Motion should be granted in this unique case. The Court recognizes that its *Markman* Order adopted constructions for claim terms that neither party proposed. NEC proposed a broad structure; Anker argued indefiniteness. Until the Court issued its *Markman* Order after the close of expert discovery, NEC could not have known what specific structural requirements Dr. Madisetti would need to address in his infringement analysis for the distinct and nuanced means-plus-function terms. That NEC previously considered specification passages that the Court considered in its *Markman* Order does not change this reality, the Court's constructions, or NEC and Anker's proposed constructions. Taken together, the timing of the Court's *Markman* Order, the complexity of the means-plus-function constructions, and the parties'

proposed dueling constructions (one of which advanced indefiniteness arguments) favor granting the Motion.

The timing of the Court's *Markman* Order and the specific claim constructions that are at issue, however, are far from dispositive. The Court does not find that Dr. Madisetti's supplement will cause a "wholesale revamping" (*see* Dkt. No. 211 at 10) of this case. The Court, rather, understands that the supplemental report identifies a limited number of infringement scenarios and that it relies on previously produced and considered evidence. The Court also believes that NEC and Anker can address such necessary changes ahead of the pre-trial conference, as detailed in the following section. Finally, the Court does not find that whether NEC can prove infringement under the Court's constructions, or is "futile" as Anker argues, controls whether NEC should be permitted to supplement its expert report.

## IV. CONCLUSION

The Court has concluded that Plaintiff's requested relief is justified, but only within the narrow and unique circumstances that this case presented. Had the Court not been presented with these distinct circumstances—where the Court adopted nuanced means-plus-function constructions that neither party proposed or sought, one party contended that the means-plus-function claim terms were indefinite, Plaintiff developed its supplemental infringement positions based on previously produced information, and any prejudice to the parties can be mitigated—the outcome would have been very different. The Court neither foresees this situation occurring frequently nor invites other post-*Markman* motions to supplement an expert report lacking such exceptional circumstances.

Accordingly, the Motion (Dkt. No. 185) is **GRANTED**. It is **ORDERED** that Anker shall serve a responsive report that is limited to rebutting NEC's new '814 Patent infringement theories by the end of **August 14, 2026**. Any depositions of the technical experts authoring such

supplements shall occur by the end of **August 21, 2026** and be narrowly tailored to the new opinions. Such depositions shall be limited to two (2) hours long.

It is further **ORDERED** that each side is permitted leave to file a single and combined summary judgment and/or *Daubert* motion not to exceed five (5) pages in length by the end of **August 19, 2026**. Any opposition thereto shall likewise not exceed five (5) pages in length and be filed by the end of **August 21, 2026**.

**So ORDERED and SIGNED this 7th day of August, 2026.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE