**PUBLIC VERSION**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

NEC CORPORATION,

Plaintiff,

v.

ANKER INNOVATIONS TECHNOLOGY CO., LTD. and ANKER INNOVATIONS LTD. (d/b/a "eufy")

Defendants.

Case No. 2:24-cv-00720-JRG

**JURY TRIAL DEMANDED**

**PUBLIC VERSION**

**PLAINTIFF NEC CORPORATION'S OPPOSITION TO DEFENDANTS' SUPPLEMENTAL MOTIONS FOR SUMMARY JUDGMENT OF NO INFRINGEMENT ON THE '814 PATENT, MOTION TO EXCLUDE THE SUPPLEMENTAL EXPERT REPORT OF DR. MADISETTI, AND FURTHER BRIEFING IN SUPPORT OF DEFENDANTS' PENDING MOTIONS TO EXCLUDE OPINIONS OF DR. MADISETTI AND MR. BERGMAN (DKT. 216)**

**PUBLIC VERSION**

**TABLE OF CONTENTS**


I. RESPONSE TO DEFENDANTS' STATEMENT OF ISSUES ........ 1

II. RESPONSE TO DEFENDANTS' STATEMENTS OF UMF ........ 1

III. ARGUMENT – SUMMARY JUDGMENT ........ 1

A. The Accused Products Include the "Determination Unit" ........ 1

B. The Accused Structures Are "Equivalents Thereof" ........ 3

C. Accused Products Other Than HomeBase 3 Infringe ........ 3

IV. THE APPORTIONMENT OPINIONS ARE VALID ........ 4

V. CONCLUSION ........ 5

PUBLIC VERSION

## TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| A | Excerpts from Supplemental Expert Report of Vijay Madisetti, Ph.D. Concerning Anker's Infringement Related to U.S. Patent No. 11,537,814, dated July 9, 2026 |
| B | Excerpts from Rough[1] Deposition Transcript of Vijay Madisetti, Ph.D., taken August 21, 2026 |
| C | Excerpts from Deposition Transcript of Erik de la Iglesia, taken August 18, 2026 |
| D | Excerpts from Expert Report of Erik de la Iglesia Responding to the Supplemental Expert Report of Dr. Vijay Madisetti Concerning U.S. Patent No. 11,537,814, dated August 14, 2026 |
| E | U.S. Patent No. 11,210,526 (the '526 Patent) |
| F | U.S. Patent No. 11,537,814 (the '814 Patent) |
| G | Excerpts from Expert Report of Erik de la Iglesia Regarding Noninfringement of Anker Accused Products, dated May 12, 2026 |
| H | Excerpts from Initial Expert Report of Vijay Madisetti, Ph.D. Concerning Anker's Infringement Related to U.S. Patent Nos. 11,210,526, 11,537,814, and 10,037,467, dated April 20, 2026 |

[1] At this time, only the Rough Dep. Tr. is available because of today's deposition of Dr. Madisetti.

**PUBLIC VERSION**

## TABLE OF ABBREVIATIONS

| **Abbreviation** | **Description** |
|---|---|
| the ’526 Patent | U.S. Patent No. 11,210,526 (the ’526 Patent) |
| the ’814 Patent | U.S. Patent No. 11,537,814 (the ’814 Patent) |
| Iglesia Dep. Tr. | Deposition Transcript of Erik de la Iglesia, taken August 18, 2026 |
| Iglesia NI Rep. | Expert Report of Erik de la Iglesia Regarding Noninfringement of Anker Accused Products, dated May 12, 2026 |
| Iglesia Supp. Rep. | Expert Report of Erik de la Iglesia Responding to the Supplemental Expert Report of Dr. Vijay Madisetti Concerning U.S. Patent No. 11,537,814, dated August 14, 2026 |
| Madisetti Dep. Tr. | Deposition Transcript of Vijay Madisetti, Ph.D., taken August 21, 2026 |
| Madisetti Op. Rep. | Initial Expert Report of Vijay Madisetti, Ph.D. Concerning Anker’s Infringement Related to U.S. Patent Nos. 11,210,526, 11,537,814, and 10,037,467, dated April 20, 2026 |
| Madisetti Supp. Rep. | Supplemental Expert Report of Vijay Madisetti, Ph.D. Concerning Anker’s Infringement Related to U.S. Patent No. 11,537,814, dated July 9, 2026 |
| UMF | Undisputed Material Facts |

## I. RESPONSE TO DEFENDANTS' STATEMENT OF ISSUES

Defendants generally set forth issues to be decided by the Court. Mot. 1.

## II. RESPONSE TO DEFENDANTS' STATEMENTS OF UMF

1. Disputed. NEC is seeking clarification on this issue. Dkt. 174.

2. Disputed on the basis that this is not the entirety of Dr. Madisetti's opinions. Ex. A ¶¶ 1-5, 27-57.

3. Disputed. These scenarios are exemplary. Ex. B at 4:23-9:2.

4. Disputed. Dr. Madisetti never stated body only. Ex. A ¶¶ 49-57.

5. Disputed. Dr. Madisetti stated that [redacted] is image data that can contribute to the generation or improvement of a machine-learning model. *See, e.g.*, *id.* ¶¶ 31-57; Ex. B at 66:12-67:10.

6. Disputed. Dr. Madisetti stated that [redacted] is the kind of image data that can improve or generate a model because it provides an example of a face not confidently recognized by the existing familiar-face data. Ex. A ¶¶ 49-57.

7. Disputed on the basis that this is not the entirety of the construction (construction also includes equivalents thereof). Dkt. 157 at 150.

8. Disputed. Dr. Madisetti's opinions include other products. *E.g.*, Ex. A ¶¶ 61–67; Ex. B at 17:10-24, 61:2-23.

## III. ARGUMENT – SUMMARY JUDGMENT

### A. The Accused Products Include the "Determination Unit"

The Court construed the determination unit's function as "determining whether or not the data is **transmission target data to be transmitted to a predetermined computer** based on a result obtained by applying the data to **the model**" and "transmission target data" as "image data that can contribute to the generation of a machine learning model." Dkt. 157 at 40, 43. The

corresponding structure includes a processor configured to determine that an image is **the** transmission target data when reliability is equal to or less than a threshold, and not **the** transmission target data when it exceeds the threshold and equivalents thereof. *Id.* at 50 (emphasis added). The processor determines whether image data is **the** transmission target data based on a threshold, where the data can contribute to the generation of **the** machine learning model—the threshold acts as a gate filtering data to the right model. *See also* Ex. C at 32:22-34:23. Anker collapses this inquiry by arguing the determination unit must evaluate whether data can ultimately generate **any** model absent the initial determination and **discarding** any data that is determined to not be transmission target data. Mot. 3-4; Ex. D ¶ 95.

Anker misapplies '526 Patent infringement theories when it recites language absent from the '814 claim ("accumulating, as learning data") and materially misrepresents Dr. Madisetti's opinions. Ex. E at cl. 1; Ex. F at cl. 1. Anker states that Dr. Madisetti stated that familiar face image data is used to update the familiar-face database (Mot. 3-4), but Dr. Madisetti instead pointed to [redacted] Ex. A ¶ 45; Ex. B at 66:12-67:10. The '526 Patent's "learning data" is not model-specific, whereas the '814 construction requires data to contribute to generation of **the model**. Ex. B at 52:15-54:15, 66:12-67:10. [redacted] *Id.* at 52:15-59:22, 66:12-67:10; *see also id.* at 14:4-15:25, 18:9-28:9. The claim **never** prescribes what happens when data is determined not to be transmission target data. Ex. F at cl. 1. Anker's own expert rejected equivalency between the '526 and '814 claims, arguing that storing video "**on its own is not sufficient**" to demonstrate learning and stated that familiar-face data is "**not used**" to update "the model or weights." Ex. G ¶¶ 508, 510.

Dr. Madisetti demonstrates that [redacted] determines whether a particular

image is transmission target data. Ex. A ¶¶ 27–57; Ex. B at 52:15-55:16; Ex. H ¶¶ 801-835, 979–984. In the familiar-face example, [redacted] Ex. A ¶¶ 35–57. In the body/person example, [redacted] *Id.* At a minimum, whether the accused processors and code are the same as or equivalent to the Court's corresponding structure is a question of fact. *See Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1268-69 (Fed. Cir. 1999).

**B. The Accused Structures Are "Equivalents Thereof"**

Anker's Motion should fail for the reasons provided above, and Dr. Madisetti's analysis independently supports infringement under the "equivalents thereof" portion of the Court's construction. Any difference between the accused logic and the Court's first determination-unit algorithm is insubstantial: the accused processor performs the identical function—determining whether image data is transmission target data to be transmitted to a predetermined computer based on a result obtained by applying the data to a model—in substantially the same way—comparing a model-derived value to a predetermined threshold and branching on the result—and achieves substantially the same result—classifying the image as transmission target data based on comparison with a threshold. Ex. A ¶¶ 27–57; Ex. H ¶¶ 801-835, 979–984.

**C. Accused Products Other Than HomeBase 3 Infringe**

Anker mischaracterizes Dr. Madisetti's opinions as identifying only [redacted] (Mot. 4-5) when Dr. Madisetti identifies [redacted] Ex. A ¶¶ 61–67; Ex. B at 17:10-24. [redacted]

Ex. A ¶¶ 27–57. [redacted] *Id.* ¶¶ 6–26. [redacted] are at least equivalent to the Court's recited structure. *Id.* ¶¶ 61–67; Ex. H ¶¶ 836–873, 979-984. HomeBase 3 merely supplies an additional transmission pathway, and as established in other briefing, is part of the '814 Accused Products. Ex. A ¶¶ 6–13, 27–34, 58–67; Dkts. 147, 178; Ex. B at 17:10-24.

## IV. THE APPORTIONMENT OPINIONS ARE VALID

Anker mischaracterizes Dr. Madisetti's opinions regarding attributing the benefits for the '814 Patent to certain third-party subscription services. Dkt. 216 at 5. Dr. Madisetti did not tie the benefits of the '814 Patent merely to AI "object detection" of the third-party subscription services. *Id.* This shows precisely the oversimplification of Dr. Madisetti's technical analysis that forms the improper foundation of Anker's motions. Contrary to Anker's oversimplification, Dr. Madisetti explained that the "benefits of third-party subscription plans" include "**distinguishing between** human, vehicle, packages, **enabling** the feature in **multi-devices**, **custom alerts**." Ex. H ¶ 1316 (emphasis added). For example, Dr. Madisetti explained that "inventions of the '814 and '467 Patents **enable multi-device detections**" and are directed to systems that can include one or more cameras. *Id.* ¶ 1317. Also, Dr. Madisetti opined that "the multi-device subscription plans emphasizing object detection features, which includes the ability to detect humans, packages, vehicle across multiple cameras, **distinguish the objects and provide accurate notifications**." *Id.* ¶ 1323. He specifically opined that "technical benefits of the inventions of the '814 Patent include Increased accuracy in object detection by using machine learning and AI techniques to, for example, **distinguish between** humans, vehicles, pets, and other objects. By implementing local **machine learning techniques**, the detections are performed with more accuracy." *Id.* ¶ 152 (emphasis added).

Each of these technical benefits of the ’814 Patent of: (1) using AI techniques to enable “multi-device detections”; (2) to distinguish between human and other objects; and (3) accurately provide notification remain undisturbed by Dr. Madisetti’s Supplemental Opinions because—when providing his infringement opinions for element [1.a] of the ’814 Patent which relates to identification of an object using a model learned by machine learning aka local AI—he explicitly referred to his opening report and reiterated his opinions for object detection under the Court’s instruction [redacted] Dkt. 185-3 ¶ 8 (emphasis added). Thus, Dr. Madisetti’s supplemental infringement opinions do not impact his opinions regarding attributing the benefits for the ’814 Patent because even his supplemental opinions confirm that the ’814 Patent is enabling multi-device detections of objects, detecting humans accurately also ensures distinguishing between humans and other objects using machine learning, and providing accurate notifications/custom alerts. The fact that Dr. Madisetti provides [redacted] for claims [1.b] and [1.c] does **not** mean that the ’814 Patent is still enabling the benefits that Dr. Madisetti relied upon to provide his value attribution opinions. Moreover, Dr. Madisetti’s supplemental opinions have no impact on his analysis with respect to the ’467 Patent, which has overlapping damages with the ’814 Patent.

## V. CONCLUSION

In view of the foregoing, Anker’s motions should be denied in their entirety.

Dated: August 21, 2026

By: */s/ Saqib J. Siddiqui*
Geoff Culbertson (Texas Bar No. 24045732)
Kelly Tidwell (Texas Bar No. 20020580)
Patton, Tidwell & Culbertson, LLP
2800 Texas Blvd. (75503)
Post Office Box 5398
Texarkana, TX 75505-5398
(P) (903) 792-7080

(F) (903) 792-8233
gpc@texarkanalaw.com
kbt@texarkanalaw.com

Saqib J. Siddiqui
Jamie B. Beaber
Tatsuya Koyama
Bryan C. Nese
Tiffany A. Miller
Alison T. Gelsleichter
Tariq Javed
Julia L. Haines
Seth W. Bruneel
Courtney Krawice
William B. Nash
Séké G. Godo
Sora Ko
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000
jbeaber@mayerbrown.com
ssiddiqui@mayerbrown.com
tkoyama@mayerbrown.com
bnese@mayerbrown.com
tmiller@mayerbrown.com
agelsleichter@mayerbrown.com
tjaved@mayerbrown.com
jhaines@mayerbrown.com
sbruneel@mayerbrown.com
ckrawice@mayerbrown.com
bnash@mayerbrown.com
sgodo@mayerbrown.com
sko@mayerbrown.com

Cliff A. Maier
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306
(650) 331-2000
cmaier@mayerbrown.com

*Counsel for Plaintiff NEC Corporation*

**PUBLIC VERSION**

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 21st day of August, 2026, via electronic mail.

By: */s/ Saqib J. Siddiqui*
Saqib J. Siddiqui

[redacted]

[redacted]

[redacted] [redacted]

[redacted]