**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| NEC CORPORATION, *Plaintiff*, v. ANKER INNOVATIONS TECHNOLOGY CO., LTD. and ANKER INNOVATIONS LTD. (d/b/a "eufy"), *Defendants*. | § § § § § § § § § § § | CIVIL ACTION NO. 2:24-CV-00720-JRG |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants' Motion to Strike and Exclude the Second Supplemental Expert Report of Mr. Bergman (Dkt. No. 240) and Defendants' Motion to Strike and Exclude the September 3, 2026 Expert Report of Dr. Madisetti (Dkt. No. 241). Having considered the motions, the associated briefing, and the documents submitted in support thereof, the Court finds that Dkt. No. 240 should be **GRANTED IN PART** and that Dkt. No. 241 should be **DENIED**.

## I. BACKGROUND

The two motions (Dkt. Nos. 240–241) are subsequent to the Court's rulings and guidance provided at the pretrial conference on August 27, 2026. The pretrial conference addressed motions filed by Plaintiff NEC Corp. ("NEC") and Defendants Anker Innovations Technology Co., Ltd. and Anker Innovations Ltd. ("Anker"). Among other rulings, the Court struck the apportionment analysis opinions of NEC's experts, Dr. Madisetti and Mr. Bergman. The Court nonetheless granted NEC leave to supplement its apportionment opinions. Anker's instant motions address NEC's supplemental apportionment opinions.

## II. LEGAL AUTHORITY

### A. Expert Opinions

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." FED. R. EVID. 702. Federal Rule of Evidence 702 requires trial courts to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied regarding an expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993).

For a jury trial, the Court's role is not to weigh the expert testimony to supplant the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the disputed evidence is sufficiently reliable and relevant for the jury. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'[T]he trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits" (citation omitted)). Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

### B. Apportionment

A patent damages award "must reflect the value attributable to the infringing features of the product, and no more." *Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) (quoting *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)). A "royalty base should not be larger than the smallest salable unit embodying the patented invention" when "multi-component products are accused of infringement." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018). Even when a damages theory relies on the smallest salable unit as the basis for calculating the royalty, the patentee must estimate what portion of that smallest salable unit is attributable to the patented technology. *Id.*

## III. ANALYSIS

### A. Anker's Motion to Strike the Supplemental Expert Report of Dr. Madisetti for Failure to Apportion (Dkt. No. 241)

Anker argues that Dr. Madisetti's supplemental report does not account for what was known in the prior art or value the difference "between the patented improvement and . . . conventional components." *See Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018). Dr. Madisetti allegedly also failed to apply a reliable methodology to apportion infringing from non-infringing features. Instead, he asserted that object detection is an advertised feature of third-party subscriptions and then arbitrarily concluded that at least 50% of a subscription price is based on infringing features. He also failed to apportion because he attributed non-accused package, vehicle, and pet detection features to an asserted patent.

NEC responds that Dr. Madisetti's prior report, which was incorporated by reference into his supplemental report, already addressed prior art. Dr. Madisetti also apparently arrived at his

50% apportionment value by identifying patented benefits, relying on Wyze as an exemplar based on testing and publicly available information, and comparing technical features of Wyze and Anker products based on testing, webpages, source code, and element-by-element infringement analysis. NEC further contends that Dr. Madisetti did not attribute pet, vehicle, or package detection separately to an asserted patent because the asserted patents more generally allow accurate human detection.

The Court finds that Dr. Madisetti's supplemental apportionment opinions should not be struck. Dr. Madisetti's original apportionment opinions did not explain whether Wyze's object detection features used the patented technology in this case. His supplemental opinions, however, purport to do so. In fact, Dr. Madisetti's supplemental report details an element-by-element comparison of Wyze's object detection functionality to the asserted patents (Dkt. No. 244-3 ¶ 80), and thereafter explains why such features may drive 50% of the revenue of Wyze's object detection services.

The Federal Circuit has suggested that similar analysis, where a patentee estimates what portion of that smallest salable unit is attributable to patented technology, is sufficient. *See Power Integrations*, 904 F.3d at 977 ("Even when a damages theory relies on the smallest salable unit as the basis for calculating the royalty, the patentee must estimate what portion of that smallest salable unit is attributable to the patented technology."). The Court declines to strike Dr. Madisetti's supplemental apportionment opinions in light of such guidance. Anker's disagreement with Dr. Madisetti's apportionment analysis, moreover, can be fully and fairly addressed via robust cross-examination.

### B. Anker's Motion to Strike the Supplemental Expert Report of Mr. Bergman for Failure to Apportion (Dkt. No. 240)

Mr. Bergman's supplemental damages report cites an article from IntelliSee that allegedly quantifies the cost of false security alarms at "$1.8 billion in wasted emergency resources." (Dkt. No. 240 at 4–5 (citation omitted).) Anker seeks to strike this. NEC opposes striking this sentence from Mr. Bergman's report because "he uses this figure to consistently demonstrate the benefits of the patented invention." (*Id.*)

The Court did not grant NEC leave to supplement its opinions on the benefits of the patented invention; it clearly granted NEC leave to only supplement and/or replace its struck technical apportionment opinions. (*See* Dkt. No. 232 at 97, 98 ("Plaintiffs are going to serve a supplemental report from . . . Mr. Bergman only addressing the apportionment issues that I've just struck.").) NEC violated the Court's instruction when it overreached to opine on benefits of the patented technology via the IntelliSee article and went beyond the limited technical apportionment opinions discussed at the pretrial conference. Moreover, the Court finds that highlighting "$1.8 billion in wasted emergency resources" at trial, as advanced by NEC, might unduly prejudice the jury and skew damages at trial. These elements, in combination, warrant Defendants' requested relief.

As a result, the Court **STRIKES** the following single sentence from Mr. Bergman's supplemental damages report: "Further, an August 2026 Axis survey of 1,000 U.S. adults found that 66% of Americans are worried about false positives or inaccurate information, and an April 2026 IntelliSee report quantified the cost of false security alarms at '$1.8 billion in wasted emergency resources.'" (*See* Dkt. No. 240-5 ¶ 41 (citation omitted).) To this extent, the motion is **GRANTED IN PART**.

The remainder of Anker's motion (Dkt. No. 240) is **DENIED**. Anker argues that Mr. Bergman's supplemental damages opinions should be struck because they rely on Dr. Madisetti's allegedly flawed apportionment analysis. The Court declines to strike Mr. Bergman's supplemental damages opinions on this basis for the reasons discussed previously. (*Supra* § III.A.)

Anker unpersuasively contends that Mr. Bergman's supplemental report deficiently includes analysis "found in his original damages report." (Dkt. No. 240 at 3–4.) This critique of Mr. Bergman's supplemental opinions is both disputed and can be fully and fairly addressed via robust cross-examination. The Court also rejects this argument for the same reasons addressed at the pretrial conference, where the Court addressed Mr. Bergman's original report and rejected very similar arguments.

## IV. CONCLUSION

For the reasons explained above, the Court finds that Dkt. No. 240 should be **GRANTED IN PART** and that Dkt. No. 241 should be **DENIED**.

**So ORDERED and SIGNED this 23rd day of October, 2026.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE