**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| NEC CORPORATION,<br><br>*Plaintiff*,<br><br>v.<br><br>ANKER INNOVATIONS TECHNOLOGY CO., LTD. and ANKER INNOVATIONS LTD. (d/b/a "eufy"),<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 2:24-CV-00720-JRG |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff's Motion to Strike the Supplemental Expert Report of Erik de la Iglesia (Dkt. No. 246) and Plaintiff's Motion to Strike Portions of Mr. Bakewell's Second Supplemental Rebuttal Expert Report (Dkt. No. 247). Having considered the motions, the associated briefing, and the documents submitted in support thereof, the Court finds that Dkt. No. 246 should be **DENIED** and that Dkt. No. 247 should be **GRANTED IN PART**.

## I. BACKGROUND

The two motions (Dkt. Nos. 246–247) are subsequent to the Court's rulings and guidance given at the August 27, 2026 pretrial conference. There the Court struck the apportionment opinions of Plaintiff's ("NEC") experts, Dr. Madisetti and Mr. Bergman. The Court nonetheless granted NEC leave to supplement its apportionment opinions. NEC then served supplemental Dr. Madisetti and Mr. Bergman reports, which Defendants' ("Anker") experts Dr. de la Iglesia and Mr. Bakewell rebutted in their own supplemental reports. NEC's instant motions challenge Dr. de la Iglesia's and Mr. Bakewell's supplemental reports.

## II. LEGAL AUTHORITY

### A. Expert Opinions

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." FED. R. EVID. 702. Federal Rule of Evidence 702 requires trial courts to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied regarding an expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993).

For a jury trial, the Court's role is not to weigh the expert testimony to supplant the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the disputed evidence is sufficiently reliable and relevant for the jury. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'[T]he trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits" (citation omitted)). Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## III. ANALYSIS

### A. NEC's Motion to Strike Dr. de la Iglesia's Supplemental Opinions (Dkt. No. 246)

NEC seeks the Court to strike paragraphs 40–48 of Dr. de la Iglesia's supplemental report. (Dkt. No. 246.) According to NEC, these paragraphs improperly opine on the state of the art, and "Anker's gamesmanship" apparently "knows no bounds." (*Id.* at 1.) The Court disagrees.

Dr. de la Iglesia's supplemental opinions rebut Dr. Madisetti's supplemental opinions. Dr. Madisetti's supplemental report addresses the state of the art for security imaging technologies in three different paragraphs. He opines that "at most, the state of the art included 'motion' based detections, not feature based detections and extractions." (Dkt. No. 244-3 ¶ 32.) Dr. de la Iglesia, in the targeted paragraphs, details how the state of the art included various object detection techniques and processing means, i.e., more than simpler motion-based detections.

The Court declines to strike Dr. de la Iglesia's state-of-the-art opinions that properly rebut Dr. Madisetti's state-of-the-art opinions; the Court does not find that Dr. de la Iglesia's rebuttal opinions are unreliable. Accordingly, the motion is **DENIED**.

### B. NEC's Motion to Strike Mr. Bakewell's Supplemental Opinions (Dkt. No. 247)

NEC seeks the Court to strike paragraphs 35–36, 40–41, 44–45, 60, and 61–69 and schedules 2.1u and 2.2u of Mr. Bakewell's supplemental damages report. The Court first addresses paragraphs 61–69 and schedules 2.1u and 2.2u, and then addresses the remaining portion of NEC's motion.

NEC argues that paragraphs 61–69 and schedules 2.1u and 2.2u of Mr. Bakewell's supplemental report have nothing to do with rebutting NEC's supplemental apportionment opinions and go beyond the bounds of the supplementation allowed by the Court. In these portions, Mr. Bakewell argues that Mr. Bergman's "'45% Subscriber Attach Rate' Further Shows the Lack

of Comparability" and support "$3,991,162" and "$3,573,832" "Adjustment[s]" to Mr. Bergman's damages analysis. (Dkt. No. 247-3 at 22, 28.)

According to Anker, NEC's point that Mr. Bakewell revised his damages calculations "is fiction." (Dkt. No. 255 at 2.) Anker also argues that Mr. Bakewell's opinions on the 45% subscriber attach rate "properly relate to the apportionment issue" addressed in Dr. Madisetti's and Mr. Bergman's supplemental expert reports. (*Id.* at 2–3.) Mr. Bakewell apparently discusses ANKER_00007116-7210 because Dr. Madisetti and Mr. Bergman discuss it in their supplemental reports.

Mr. Bergman's 45% subscriber attach rate remained the same between his opening report and the challenged supplemental report. Paragraphs 61–63 and 66–69 and schedules 2.1u and 2.2u of Mr. Bakewell's supplemental report, however, provide new opinions to rebut the unchanged 45% subscriber attach rate; they do not provide proper apportionment rebuttal opinions that the Court granted leave to present. As a result, the Court **STRIKES** paragraphs 61–63 and 66–69 and schedules 2.1u and 2.2u of Mr. Bakewell's supplemental report. (*See* Dkt. No. 247-3.) Paragraphs 64–65 of Mr. Bakewell's supplemental report, in contrast, provide apportionment rebuttal opinions that the Court does not strike. To this extent, the motion is **GRANTED IN PART**.

The Court finds that the remaining portions of Mr. Bakewell's supplemental report appropriately rebut NEC's supplemental rebuttal opinions, such that the remainder of the motion is **DENIED**. As to these remaining portions which NEC disputes (paragraphs 35–36, 40–41, 44–45, and 60 of Mr. Bakewell's supplemental report), NEC contends that Mr. Bakewell provides entirely new opinions, rather than rebuttal opinions, addressing market segmentation, consumer demand for local storage, and the comparability of eufy products to third-party products. However, these portions directly respond to NEC's new supplemental reports and can be fully and fairly

addressed via robust cross-examination. In fact, in one of the paragraphs that NEC targets, Mr. Bakewell explains how Mr. Bergman "significantly overstates the incremental value" of asserted patents. (Dkt. No. 247-3 ¶ 40.) The Court is persuaded that such analysis properly relates to apportionment.

## IV. CONCLUSION

For the reasons explained above, the Court finds that Dkt. No. 246 should be **DENIED** and that Dkt. No. 247 should be **GRANTED IN PART** as set forth above.

**So ORDERED and SIGNED this 23rd day of October, 2026.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE