**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| NEC CORPORATION,<br><br>*Plaintiff*,<br><br>v.<br><br>ANKER INNOVATIONS TECHNOLOGY CO., LTD. and ANKER INNOVATIONS LTD. (d/b/a "eufy"),<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 2:24-CV-00720-JRG |

**MEMORANDUM OPINION AND ORDER**

The Court issues this Order *sua sponte*. Plaintiff NEC Corporation ("Plaintiff") filed its Complaint in the above-captioned case against Defendants on September 3, 2024 and later filed its First Amended Complaint on November 13, 2025. (Dkt. Nos. 1, 63). The First Amended Complaint remains operative in this case. The First Amended Complaint alleges infringement of, *inter alia*, U.S. Patent No. 10,999,635 ("the '635 Patent"). (Dt. No. 63, ¶¶ 94-112). Plaintiff has narrowed its case at trial with respect to the '635 Patent, electing to assert only claim 5 before the jury. (Dkt. No. 277). Defendants Anker Innovations Technology Co., Ltd. and Anker Innovations Ltd. (d/b/a "eufy") ("Defendants") (together with Plaintiff, the "Parties") asserted, and maintain, that claim 5 of the '635 Patent is patent-ineligible under 35 U.S.C. § 101. (Dkt. No. 68 at 14); (Dkt. No. 276 at 1-2). The Court now turns to this issue, given that none of the Parties sought summary judgment or any other relief on Defendant's 101 defense prior to trial. The Parties seek to submit the question the '635 Patent's eligibility to the jury. (Dkt. No. 217-1 at 14). However, prior to submission, the Court must determine whether claim 5 is directed towards an abstract idea, separate from the jury's inquiry at Step Two. *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217

(2014). The Court ordered the Parties to submit targeted briefing as to whether claim 5 was directed to an abstract idea under Step One. (Dkt. Nos. 281, 282). Having considered both claim 5 of the '635 Patent and the Parties' submissions, the Court finds that claim 5 is not directed to an abstract idea and thus the question of its eligibility under Step Two need not be submitted to the jury.

## I. LEGAL AUTHORITY

In *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, the Supreme Court set out a two-step test for determining subject matter eligibility. 566 U.S. 66, 77 (2012). A court must perform this test "on a claim-by-claim basis." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1340 (Fed. Cir. 2013). However, courts need not individually analyze every claim individually. *Alice*, 573 U.S. at 224-26. One claim may be representative if it encapsulates other claims, which are "substantially similar" and "linked to the same . . . idea." *Content Extraction & Transmission LLC v. Well Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348–49 (Fed. Cir. 2014). If the claims "contain only minor differences in terminology but require performance of the same basic process . . . they should rise or fall together." *Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1368 n.7 (Fed. Cir. 2017).

At Step One, "we determine whether the claim[] . . . [is] directed to one of those patent-ineligible concepts." *Alice*, 573 U.S. at 217. "[D]istrict judges always retain discretion to determine the abstract idea before proceeding to step two." *Ollnova Techs. Ltd. v. Ecobee Techs. ULC*, No. 25-1045, at *21 n.7 (Fed. Cir. 2026) ("[A]nd doing so sometime before trial can avoid the possibility that an after-trial resolution of step one would identify a different abstract idea than reflected in the jury charge, requiring a new trial.").

At Step Two, courts consider whether "the additional elements [of a claim] transform the nature of the claim into a patent-eligible application." *Alice*, 573 U.S. at 217 (citations omitted).

In computer-implemented inventions, the computer must perform more than "well-understood, routine, conventional activities" previously known to the industry. *Univ. Secure Registry*, 10 F.4th at 1346. However, the elements of each claim must be considered "individually and as an ordered combination," because "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Alice*, 573 U.S. at 217; *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

Subject matter "[e]ligibility is ultimately a question of law that may be based on underlying factual findings." *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1377 (Fed. Cir. 2024). The question of "[w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (2018). "Whether a particular technology is well-understood, routine, and conventional goes beyond what is simply known in the prior art. The mere fact that something is disclosed in the prior art, for example, does not mean it was well-understood, routine, and conventional." *Id.* at 1369. Any material fact as to this inquiry must be proven by clear and convincing evidence. *Id.* at 1368.

## II. ANALYSIS

### A. The '635 Patent

The '635 Patent purports to provide "an image processing system, an image processing method, and a program capable of suppressing confusion that may arise in a case where a target person is identified when tracking a person." '635 Patent at Abstract. The '635 Patent describes the state of the art as "systems for carrying out monitoring over a wide range using video images from a plurality of cameras." *Id.* at 1:20-21. For example, the patent describes one such device "that is capable of appropriately tracking (monitoring) a person across cameras using inter-camera coupling relation information." *Id.* at 1:22-25. Such a device "determines a correspondence

relation of a person in accordance with a similarity in person feature quantities between a point where a person appears in a camera view (an appearing point) and a point where the person disappears from the camera view (a vanishing point)." *Id.* at 1:25-30.

However, the '635 Patent identifies a problem with this approach: "When person re-identification is automatically determined according to similarity . . . errors occur with a probability." *Id.* at 1:31-34. Given this limitation, the patent explains that "person re-identification is implemented with human involvement." *Id.* at 1:34-35. The '635 Patent explains that this "human involve[d]" implementation has its limits, because "increasing human involvement with respect to monitoring is highly likely to complicate monitoring work. In particular, when there is a plurality of persons who are subjects under monitoring, it may become difficult for a user to comprehend for which person operations are being performed, or operations for specifying a person may become complicated." *Id.* at 1:36-42. The '635 Patent purports to provide a solution to this problem by reducing human involvement in identification, re-identification, and tracking individual monitored persons. *See generally id.* Specifically, the '635 Patent proposes a user interface that tracks unique individuals by assigning them to tabs that a user can then switch between. *See, e.g.*, '635 Patent at Fig. 7:

FIG. 7



Claim 5 of the ’635 Patent recites:

> 5. A display control method comprising:
> accepting input a plurality of videos captured by a plurality of video cameras;
> registering a plurality of persons appearing in the input plurality of videos;
> controlling a display device to display a first window and a plurality of tabs; and
> assigning the plurality of tabs to respective registered persons,
> wherein the first window includes:
>
> > a first set of videos among the plurality of videos, the first set of videos being associated with a first assigned person;
> > a first diagram in which information of time ranges when the plurality of video cameras each captured the first assigned person is shown with identifiers of the plurality of video cameras and a time axis; and
> > a first tab including an image of the first assigned person; and
>
> wherein the first window is switchable by operation of the tabs to a second window including:
>
> > a second set of videos among the plurality of videos, the second set of videos being associated with a second assigned person;
> > a second diagram in which information of time ranges when the plurality of video cameras each captured the second assigned person is shown with the identifiers of the plurality of video cameras and the time axis, the second diagram which is associated with the second assigned person being different from the first diagram which is associated with the first assigned person; and
> > a second tab including an image of the second assigned person.

’635 Patent at 15:41-16:7 (claim 5).

**B. Eligibility of Claim 5 under § 101**

The Supreme Court has “long held that [§ 101] contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable.” *Ass’n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (internal quotation omitted). To “distinguish[] patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible application of those concepts,” the Supreme Court has articulated a two-step framework. *Alice Corp. Pty. Ltd. v. CLS Bank Int’l*, 573 U.S. 208, 217 (2014). First, the court must determine “whether the claims at issue are directed to a patent-ineligible concept.” *Id.* If the court finds at step one that the claims at issue are directed to a patent-ineligible concept, the court

evaluates whether there is "an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18 (internal citation omitted).

**1. *Alice* Step One**

At Step One, the Court must analyze the "focus" of the claim, and its "character as a whole," to determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). "The inquiry often is whether the claims are directed to a 'specific means or method' for improving technology or whether they are simply directed to an abstract end-result." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)). If a claim could be "performed in the human mind, or by a human using pen and paper," then it is abstract. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). "[M]erely adding computer functionality to increase the speed or efficiency of [a] process does not confer patent eligibility on an otherwise abstract idea." *Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015).

Defendants contend that "claim 5 of the '635 patent is directed to the abstract idea of graphically representing how many times a person is assigned to a video." (Dkt. No. 282 at 1). Defendants argue that "[e]ach of the analytic tools to identify abstract ideas"—namely, (1) analogizing to case law and human activity; (2) evaluating whether the claim provides a technological solution to a technological problem; and (3) evaluating whether the claims are result-oriented or focused on a computer-specific improvement—support finding that claim 5 is abstract. (*Id.* at 2-5).

As to the first analytic tool, Defendants contend claim 5 is directed to collecting, storing, organizing, and displaying information—making it abstract as in *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1367 (Fed. Cir. 2024) and *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). (Dkt. No. 282 at 3-4). Defendants also argue that the steps of claim 5 are analogous to human activity: "The classic mystery *Murder on the Orient Express* requires Detective Poirot to determine and track the movements and locations of multiple suspects. Here, the purported advance is using a tab to flip from one subject to another. But this is no different than sorting a photo album by subject and adding a tabbed divider between subjects." (Dkt. No. 282 at 2-3).

As to the second analytic tool, Defendants argue that the '635 Patent does not present a technological solution to a technological problem. (*Id.* at 4-5). Defendants frame the problem to be solved by the '635 Patent as "a user's ability to track multiple people without becoming confused or overwhelmed by the number of people being tracked." (*Id.* at 4 (citing '635 Patent at 1:38-42)). Under such framing, Defendants contend there can be no non-abstract technological solutions. In fact, Defendants contend that there is no technological problem at all. (*Id.* ("That is not a technological problem with cameras or tracking software; it is simply a function of person's ability to multitask and synthesize multiple pieces of information.")). Defendants also argue that, even if there was, claim 5 offers no technological solution because it "simply groups video data on a subject-by-subject basis and allows a user to switch between subjects," rather than providing improved functionality, efficiency, new information, and/or new techniques. (*Id.* at 4-5 (citations omitted)).

As to the third analytic tool, Defendants argue that claim 5 recites functional terms without a computer-specific improvement. (*Id.* at 5). Defendants urge that claim 5 merely "uses generic

computer functionality for the use of tabs to organize a display of when a person appears on a camera" without more. (*Id.*).

Plaintiff asserts that claim 5 is directed to an improvement in computer technology, namely "a graphical user interface that displays to a user information concerning persons monitored by multiple video cameras." (Dkt. No. 281 at 1). Plaintiff contends that the problem stated in the '635 Patent, *supra* § II.A, "is inherently rooted in computer systems, and the claimed solution, a particular configuration of windows, tabs, and diagrams, is directed to alleviating user confusion with the computer system's processes." (*Id.*). Plaintiff argues that claim 5 recites requirements that "appl[y] only to a particular computer system," including "(1) a first window that displays videos associated with a first person and a diagram that displays identifiers of cameras and a time axis, (2) a second window with similar requirements for a second monitored person, (3) tabs with images of the respective monitored persons associated with those windows, and (4) switchable functions." (*Id.* at 1-2).

Plaintiff argues that claim 5 is akin to the claims in *Core Wireless Licensing S.A.R.L. v. LG Elecs. Inc.*, 880 F.3d 1356, 1362-63 (Fed. Cir. 2018), in which the Court found that certain claims directed towards "a particular manner of summarizing and presenting information in electronic devices" were not abstract. (Dkt. No. 281 1-3 (collecting cases)). Plaintiff also contends that *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 (Fed. Cir. 2018), is instructive, in which the Federal Circuit held claims directed to aid navigating "complex three-dimensional electronic spreadsheets" was not abstract. (Dkt. No. 284 at 3). Plaintiff also distinguishes claim 5 from the claims found abstract in *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016), arguing that claim 5 "sets forth a particular graphical user interface for displaying that information, with a specific configuration of tabs, windows, and diagrams." (Dkt. No. 281 at 4 ("The claims

are directed to this improved display . . . and it is this improved display that offers a particular improvement to a computer system that uses inputs from a plurality of cameras and monitors the incidence of a plurality of persons in the videos captured by those cameras.”)).

In sum, Defendants contend that claim 5 falls within and is governed by *Electric Power Grp.*, 830 F.3d at 1350; while Plaintiff contends claim 5 provides a specific technological improvement via a graphical user interface and is controlled by *Core Wireless*, 880 F.3d at 1356. In the Court’s view, this dispute comes down to whether claim 5 is directed towards an improved user interface that overcomes a technological problem specific to the purported field of the ’635 Patent.

The Court finds that claim 5 is not abstract and is “directed to an improved user interface for computing devices” as in *Core Wireless*. 880 F.3d at 1362. As in *Core Wireless*, the ’635 Patent “confirms that these claims disclose an improved user interface for electronic devices.” *Id.* at 1362-63. As explained above, the ’635 Patent describes a problem in the relevant field in which users would have trouble identifying, re-identifying, and tracking unique subjects monitored by prior art camera systems. *Supra* § II.A. The patent purports to solve that problem by providing a particular user interface in which unique subjects are identified, re-identified, and given their own tabs in the user interface to allow a user to efficiently follow information that may otherwise be, as the patent puts it, “complicated” to comprehend. ’635 Patent at 1:36-42. The Court finds that claim 5 is directed to that precise solution, reciting “a specific manner of displaying a limited set of information to the user” by presenting individual tabs for each unique subject to overcome the issue in the prior art identified by the ’635 Patent. *Core Wireless*, 880 F.3d at 1362-63; *supra* § II.A. Accordingly, the Court finds that claim 5 of the ’635 Patent is not directed to an abstract idea.

**2. *Alice* Step Two**

Having found that claim 5 of the ’635 Patent is not directed towards an abstract idea, the Court finds that the inquiry under Step Two need not be submitted to the jury. *Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890, 898 (Fed. Cir. 2019) (“Because the claims in the ’[635] patent are not directed to an abstract idea, we need not proceed to *Alice* step two.”); *see also Pardalis Tech. Licensing, LLC v. Int'l Bus. Machines Corp.*, No. 2:22-CV-0452-JRG-RSP, 2024 WL 4332695, at *5 (E.D. Tex. Aug. 5, 2024) (“As the Court finds the claims are not directed to an abstract idea under step one, there is no need to proceed under step two.”), *report and recommendation adopted,* No. 2:22-CV-0452-JRG-RSP, 2024 WL 4249844 (E.D. Tex. Sept. 19, 2024).

## III. CONCLUSION

For the reasons stated herein, the Court finds that claim 5 of the ’635 Patent is not directed to an abstract idea, and, accordingly, that the question of the ’635 Patent’s eligibility need not be submitted to the jury.

**So ORDERED and SIGNED this 10th day of November, 2026.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE